Deadericic, J.,
delivered the opinion of the Court.
In 1862 or 1863, plaintiff sold to one Cunningham two slaves, a boy belonging to his son Howell, and a girl belonging to himself, for one thousand six hundred dollars in gold. Defendant, Williams, became his surety upon the note executed to plaintiff for the price of the two slaves. In 1867, Cunningham, in lieu of the one thousand six hundred dollar note and interest, executed his individual *524 note to plaintiff for the price of the girl, and also gave bis note, with Seth Williams, the defendant, as his surety, dated '22d February, 1867, due one day after date, payable to the plaintiff, for one thousand dollars, for the price of the boy belonging to his son.
The son was a minor at the time of the execution of the said notes, and had not attained his majority at the time of the trial of this cause. Suit was instituted in the Circuit Court of Haywood county upon the one thousand dollar note, by the plaintiff against Seth Williams only; to which defendant pleaded payment, tender, and failure of consideration. There being no evidence offered pertinent to the pleas of payment and tender, it is only necessary • to notice the last named plea, which states in substance, that the note sued on, was executed by said Cunningham and defendant, as his surety, for the price of a negro boy, and that said boy was, at the time of the sale and delivery to Cunningham, the property of II. Barbee, the son of plaintiff, and that said plaintiff had no right or authority to sell said boy, and did not and could not convey any title to said Cunningham, etc.
To this plea we find the words “replication and issue,” and the names of plaintiff’s counsel signed thereto, and upon the pleadings thus made up, as to all the issues tendered by the several pleas, the parties submitted the cause to a jury, who rendered a verdict in favor of defendant at January *525 Term, 1869. Tbe court refusing a new trial to plaintiff, be tendered bis bill of exceptions, and appealed in error to tbis court.
Tbe argument bere lias been mainly directed to tbe ■ question of - tbe father’s- right, as natural guardian of bis infant son, to dispose of bis property by sale.
It was for some time regarded, at common law, a doubtful question, whether tbe father, as natural guardian of bis infant child, was entitled -to tbe possession and control of- bis personal estate. It was, however, finally settled that be was not, and such is tbe well understood law in Tennessee.
In 10 Yer., 15, tbe court say tbe reason and justice of tbis rule is obvious; tbe infant has not discretion to protect bis own rights; tbe father may be unworthy of trust and confidence, and there is no security for bis ultimate responsibility.
It is upon tbis ground of incapacity for self-protection, that tbe courts will pronounce contracts, whether made by, or for tbe infant, void, when it appears they are to bis prejudice; but when they are beneficial to him, they will be held valid; and when it is uncertain whether tbe contract -is beneficial or prejudicial to tbe infant, it is avoidable only at tbe election of tbe infant.
Acts of a guardian by nature, prejudicial to tbe infant, are held to be ineffectual, yet those of a ^contrary tendency are allowed to avail: 8 Yer., 387; 5 Yer., 281. Thus, possession of a chattel, held by such guardian for an infant, adversely for *526 three years, vests tbe title in sncb infant as effectually as if tbe possession were held by a regular guardian: lb.
In tbis view, it becomes material to understand tbe issues presented by tbe pleadings, and submitted to tbe jury.
As before stated, replication to tbe plea of “failure of consideration,” was not formally drawn, or set out, but tbe name or word “replication” was filed in its stead, and tbe parties elected to go to trial upon such informal pleading. Tbe defendant might bave treated tbis “replication” as a nullity, but having elected to treat it as making up an issue, “it will be held to be a replication suitable to tbe defense made:” 3 Hum., 84; 5 Hum., 559; 1 Hum., 90; 9 Yer., 20; 3 Sneed, 454.
Tbe plaintiff under tbis state of tbe pleading was entitled to bave bis replication to tbe plea of failure of consideration “ held to be a replication suitable to tbe defense made,” and that defense, as appears from tbe evidence, was, that tbe action was prosecuted in his name for tbe benefit of, and use of bis son, Howell Barbee, who was tbe owner of tbe slave for whom tbe note was executed, and that tbe note was executed to tbe plaintiff by said Cunningham and tbe defendant, with tbe knowledge that said slave was tbe property of said Howell Barbee.
These facts are distinctly shown by tbe testimony of Cunningham himself, and upon tbe principles settled in tbe case of Trezevant v. McNeal, *527 2 Hum., 352, we are of opinion they constitute an’ appropriate and siifficient answer to defendant’s plea.
It is true, as a general proposition, that if one sells personal property in Ms possession, and clothed with tbe visible ownership 'at the time of sale, he undertakes that he has the right to sell, and if he has not the title, but the same was in a third party at the time of sale, he will be responsible immediately for the breach of an implied warranty of title.
But this principle does not apply where the person does not sell as owner of the property, but in some special character or capacity, and this 'is known to the purchaser: 1 Head, 508, citing Addison on Contr., 268.
The very facts now pleaded by defendant, and relied upon by him, to release him from the payment of the note, was known to him when the note was executed.
The possession of the slave was transferred to the purchaser at the time of sale; the. note sued on was executed with a knowledge of the fact, that the slave for whom it was executed belonged to a third party; defendant’s plea, while alleging plaintiff had no title to the slave, does not charge any fraudulent concealment of this fact, or other fraud or deceit; Cunningham, the purchaser, and defendant, had not been interrupted in their possession of the slaves from the time of the sale until their . emancipation; no offer had ever been made *528 to return the slave, and without being dispossessed by a paramount title, or an offer to return upon ascertaining the defective title of his vendor, or at least averring a sufficient legal excuse for not offering to return the slaves, he could not maintain an action, or successfully resist the payment of the price merely upon the ground, that the vendor had no title: 1 Head, 509, 510.
The plaintiff would be entitled to recover upon a 'note executed to him under such circumstances, and such recovery would be for the benefit of his son, who alone, if of full age, could receive the amount recovered; if still a minor, then his regular guardian alone could receive it, and when collected, it would go in satisfaction, in full, or pro tanto, according to circumstances, of damages he might have been entitled to for the wrongful conversion of his property.
"We are, therefore, of opinion that the judgment of the Circuit Judge is erroneous and must be reversed.